## No. 25175

**The People of the State of Colorado v. William Shearer**
(508 P.2d 1249)

Decided April 16, 1973.                    Rehearing denied May 7, 1973.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, Jack E. Hanthorn, Assistant, for plaintiff-appellee.

Rollie R. Rogers, State Public Defender, J. D. MacFarlane, Chief Deputy, Kenneth J. Russell, Deputy, for defendant-appellant.

MR. JUSTICE ERICKSON delivered the opinion of the Court.

On December 4, 1948, a furniture store was robbed and the proprietor, Max Perotin, was murdered. William Shearer was arrested by the police, confessed, and was charged with first-degree murder. He was seventeen years old at the time, and he was indigent. The court appointed an experienced and well-known Denver lawyer to represent him. The lawyer who defended Shearer is now dead. This post-conviction

proceeding which is before us for review was initiated more than twenty years after Shearer was convicted.

Shearer entered a plea of not guilty and was tried before a jury. He was convicted by a jury and sentenced to life imprisonment. Life imprisonment was the maximum sentence, inasmuch as the defendant had not attained the age of eighteen at the time of his conviction. C.S.A. 1935, ch. 48, § 32. In the course of the trial, his confession was introduced into evidence over defense counsel's objection. The jury was not specifically instructed on the weight to be given to the defendant's confession. Following conviction and the imposition of sentence, the defendant was advised by his counsel that if a motion for a new trial or an appeal were successful, a new jury at the time of retrial could inflict a death sentence. Shearer was also advised by his counsel that an appeal would cost at least $2,000. After consulting with his lawyer, the defendant wrote a letter to his lawyer, stating that he did not desire to seek a new trial. As a result, no motion for a new trial was filed, no transcript was ordered, and the defendant commenced service of his sentence.

In 1965, sixteen years after he was convicted, the defendant wrote the clerk of the district court and requested a free transcript and was advised that the matter would be looked into. In 1967, the defendant, pro se, filed a motion for a free transcript which was denied by the trial court. Finally, in 1969, twenty years after the conviction, the trial court granted the defendant's motion for a free transcript. Unfortunately, the passage of time made the order to provide a free transcript impossible to perform. The court reporter was in a rest home, nearly blind, and could not transcribe his notes. Thereafter, the shorthand notes were submitted to experts from the National Association of Court Reporters. Shorthand experts were unable to read the shorthand notes of the court reporter and prepare a transcript.

In 1970, the defendant filed a Crim. P. 35(b) motion, demanding that he be granted a new trial because of the failure of the court to provide him with a transcript of his trial. On October 8, 1970, the motion was denied.

The defendant asserts that the confession which was admitted at his trial was not obtained voluntarily and that the admission of his confession into evidence requires reversal. Because of the defendant's claims relating to the confession, two hearings were held by the district court, and the following findings were made:

Shearer was arrested at 3:30 p.m. on December 6, 1948, and shortly thereafter he was warned that any statement he made could be used against him. Under questioning by several detectives, the defendant confessed to the killing before 9:00 p.m. that night. The next day, the defendant was again warned that his statements could be used against him, but, nevertheless, he confessed and signed his statement. At the post-conviction hearing, the district court found specifically that the confession was voluntary and admissible under the standards applicable at the time of Shearer's trial. The defendant's confession was introduced at his trial, over objection, but the trial court held no preliminary hearing on the admissibility of the confession. Moreover, none of the instructions given to the jury specifically dealt with the extra-judicial confession.

The district court's finding that the confession was voluntary and admissible was made after testimony was taken to determine the voluntariness of the defendant's confession. The court weighed conflicting stories and resolved the issue against the defendant. The defendant claimed at the hearing that the questioning was extensive and that he was threatened and assaulted by the detectives who interrogated him. The two detectives who were present at the time the confession was given produced their notes and testified as to the circumstances and events which preceded the confession. This post-conviction proceeding raises three issues:

I. Does the unavailability of a transcript of the trial proceedings entitle the defendant to a new trial?

II. Does the procedure employed by the trial judge in determining the admissibility of the confession require that a new trial be ordered?

III. Did the trial court commit constitutional error in failing

to instruct the jury on the weight to be given the defendant's confession, and does such an error require a new trial?

We answer the questions in the negative.

## I.

### Unavailability of the Transcript

It is now well established that an indigent defendant is entitled to obtain a free transcript when necessary to exercise the right of appeal. *Griffin v. Illinois,* 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956); *Mayer v. Chicago,* 404 U.S. 189, 92 S.Ct. 410, 30 L.Ed.2d 372 (1971). However, in this case, the absence of a trial transcript does not prevent review of the constitutional issues which have been raised by the defendant. Thus, the failure to provide a transcript of the trial does not prejudice the defendant. The only claims which the defendant raises relate to the admission of his confession and the failure of the trial judge to properly instruct the jury on the issues relating to his confession. The instructions which were given to the jury are before us as part of the Crim. P. 35(b) record. Also, extended testimony relating to the confession issue appears in the record which was made in the course of the district court's hearing on the Crim. P. 35(b) motion. It found that the confession was voluntary but that a specific instruction on the weight to be given the confession was not given. The district court, however, did not deem that the failure to specifically instruct the jury required that a new trial be granted. Nothing would be gained by providing a transcript. Where preparation of a transcript would be an empty gesture, a new trial is not required when the transcript is unavailable. *Britt v. North Carolina,* 404 U.S. 226, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971); *Mayer v. Chicago, supra; Draper v. Washington,* 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed.2d 899 (1963). It is clear to us that the defendant was not the victim of invidious discrimination as a result of the unavailability of a transcript which was not requested until sixteen years after the trial was concluded. *See Norvell v. Illinois,* 373 U.S. 420, 83 S.Ct. 1366, 10 L.Ed.2d 456 (1963).

## II.
## The Admissibility of the Confession

The defendant contends that a new trial should be granted because the trial court failed to conduct a proper *Jackson-Denno* hearing to determine whether the confession was voluntary and admissible. *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). The district court, in the Crim. P. 35(b) proceeding, conducted a full hearing to determine whether the confession was, in fact, voluntary. The finding of admissibility by the district court, after a full post-conviction hearing on the defendant's claims, cures the *Jackson-Denno* error which occurred in 1949. *Swenson v. Stidham,* 409 U.S. 224, 93 S.Ct. 359, 34 L.Ed.2d 431 (1972).

The district court's resolution of the conflicting testimony does not provide a basis for reversal. When a district court's finding that the confession was voluntary and admissible is supported by competent evidence, we will not disturb that finding on appeal. *People v. Smith,* 179 Colo. 413, 500 P.2d 1177 (1972).

Shearer also contends that the district court's determination that the confession was admissible cannot stand because the prosecution failed to establish admissibility beyond a reasonable doubt. Admissibility of a confession need only be established by a preponderance of the evidence. *Lego v. Twomey,* 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972); *People v. Smith, supra.*

## III.
## The Lack of a Jury Instruction

The record reflects that the trial judge did not instruct the jury on the weight which the jury should give to the defendant's confession. The defendant contends that the failure to specifically instruct the jury on his confession requires that we grant a new trial. It is obvious to us that error occurred, but the question is whether that error requires a new trial. A two-step procedure was and is proper to resolve the issue of voluntariness of a confession. First, the

trial judge must determine whether the confession is voluntary; and second, if the confession is voluntary and is admitted into evidence, the trial judge should instruct the jury on the weight to be given the confession. *Bruner v. People,* 113 Colo. 194, 156 P.2d 111 (1945). *See also, Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

In *Osborn v. People,* 83 Colo. 4, 262 P. 892 (1927), we said:

"The court having admitted the confession in evidence, it is for the jury to determine the weight to which it is entitled. The jury may accord to it great weight, little weight, or no weight at all, depending on the circumstances surrounding the making of the confession."

If the failure to properly instruct the jury had been properly raised at the time of trial or in a motion for a new trial or on appeal, we might well have reversed and ordered a new trial. However, we do not have the matter before us on appeal. This proceeding is not a direct appeal, but a proceeding to review a Crim. P. 35(b) motion and hearing for post-conviction relief. Crim. P. 35(b) is not a substitute for appeal or writ of error, but is a vehicle for correcting errors of constitutional magnitude which were not previously raised and ruled upon. *Whitman v. People,* 170 Colo. 189, 460 P.2d 767 (1969); *Morse v. People,* 180 Colo. 49, 501 P.2d 1328 (1972).

In effect, the issue which we must resolve is whether the failure to instruct the jury on the confession was a fundamental error which would provide a basis for collateral attack in a post-conviction proceeding. As a general rule, errors in jury instructions do not constitute fundamental error that would provide a basis for collateral attack. *Linebarger v. State of Oklahoma,* 404 F.2d 1092 (10th Cir. 1968); *Martinez v. Patterson,* 371 F.2d 815 (10th Cir. 1966); *Peoples v. Hocker,* 423 F.2d 960 (9th Cir. 1970); *Kearney v. Peyton,* 360 F.2d 589 (4th Cir. 1966) (all federal habeas corpus petitions by state prisoners).

In our view, the belated attack that is now made does not require that we grant the defendant a new trial. In

*Morris v. Boles,* 386 F.2d 395 (4th Cir. 1967), a similar claim was made and held to be error, but not an error of such significance as to require that the federal court intervene to protect a state prisoner's constitutional rights. The general instructions which the court gave covered the fact that the jurors served as the sole judges of the credibility of the evidence, which included the weight to be given the defendant's extra-judicial confession. Even though failure to give a more specific instruction was error, we do not deem that error to be of such constitutional magnitude as to require a new trial. *Clifton v. United States,* 371 F.2d 354 (D.C. Cir. 1966).

The United States and Colorado Constitutions guarantee an accused trial by a fair and impartial jury. A fundamentally fair trial is all that is required. An accused is not guaranteed a perfect trial. The defendant has not established that he was not granted a fundamentally fair trial. We look to substance, and not to technicalities and ingenious arguments which have now been raised for the first time in a Crim. P. 35(b) motion.

Our constitutional goal is to provide for ordered liberty. Ordered liberty protects the rights of the individual charged with a crime while affording society protection as to both person and property. In resolving the constitutional issues which have been raised in this case, it is necessary to balance the rights of the accused to review a trial with post-conviction proceedings against the right of society to have finality in court determinations. *Compare, Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). We find that the errors which were committed do not require reversal.

Judgment affirmed.